Final case for argument this morning is 14-1007, Love N'' Care Ltd. 7 years ago in the Hakem case, this court explained how to rescind a prior prosecution disclaimer that a term opening was limited to a self-sealing opening that closes when suction is not applied. In the present case, the district court applied that prior disclaimer to five further patents even though the inventor, Eddie Hakem, had rescinded it. Let me start with a 386 patent. First, he gave a clear public notice and he said in the record at A. 234-35, he referred back to the specific disclaimer where he mentioned the argument that the opening must have self-sealing characteristics. Then he said I want these claims to have the broadest reasonable interpretation and then he said, and I'm still quoting, the term includes any opening of any kind without requiring any sealing characteristics or other special characteristics. He continued to say no limitation is intended on... Did they actually disclaim the claim language that the district court and this court attached to 931? I believe that is a rescission of the disclaimer. Did I misunderstand your question? Did they actually disclaim that claim language? You mean in the 931 prosecution? Yes. Based on this court's decision, as I read it in the 2007 case, the court seemed to say... Mr. Hakem and LNC said that they no longer intended for opening to be limited to a slit or self-closing mechanism or in any other way. That's correct. Did they actually disclaim the claim language that the court attached to 931 and that this court attached in the case? It seems that your Honor is asking me the question that was posed in the 2007 case. The exact language, which is unfortunate language from the prosecution, is at the record at A452. The inventor there, Mr. Hakem, through his representative, talked about the present invention being directed to a no-spill cup and by providing both the elastomeric member with a slit and a blocking element, etc., etc. Then he said none of the references have that. So that was an unfortunate statement that I have to live with and I'm now here to say that he has rescinded that in this prosecution. I think I'm getting at the same thing that Judge Wallach is getting at. I read everything you cite as examples of how he, in your view, disclaimed it or rescinded it, but I don't find where he expressly states that there was a disclaimer found and he doesn't want the disclaimer to apply to his current application. I don't see it. Some of the language you cite seems to dance around that, but to me it's not clear. It's absolutely not clear that you rescinded the disclaimer in the material that you cite. So tell me why I'm wrong. Well, if I could have chosen other language, I would have, but this is the language that was chosen. He did say, I don't want any special sealing characteristics, and that was the disclaimer. He also provided copies of the judicial opinions that gave the disclaimer, that found the disclaimer. In the IDS, you mean? I mean, he cites copies of the opinions, but he never calls out the issue of the disclaimer in those opinions. And the stuff in the records, I don't know if I can lay my hands on now, but certainly, I don't think it's there. I mean, the fact that he provided the opinions without characterizing what about the opinions was relevant here, I don't think gets you there. Why am I wrong? I think otherwise, Your Honor. I think when this court performs claim construction, there's two policies. Ultimately, there are only two. One is, are we serving the patent system that the Constitution sets forth? And two is, are we protecting the public interest? Those are really the ultimate questions when we do claim construction. Now, here, we have an inventor whose lawyer made a statement back in 2000 saying that, well, my invention has a slit and it self-seals. Now, what happens when the inventor says, wait a minute, I have a broader invention than that, and I want to get more patents for my broader invention? Now, in my 40 years of practice, this happens all the time. Well, I think what happens, though, is, as we said in Hakeem, you make a clear rescission and then the examiner can look at the prior, it's sufficiently clear to allow the examiner to look at the previous disclaimer and the prior art that it was made to avoid may need to be revisited. Where was that? I mean, so we've not said you can't do it. We've given you the roadmap in terms of how it ought to be done fairly to give adequate notice, and I'm not seeing where you did that here. I think it's a question of judgment, Your Honor. I think that when he says the disclaimer was self-sealing characteristics, and he says at page 234 to 235 that that was the issue. And then he says, I don't want that. I want to be free of any sealing characteristics or other special characteristics. And then he says, I want no limitation on that. And in another case, he refers specifically to… But don't you agree that he's required to expressly state that there was a disclaimer filed, found in an earlier case? No, I don't agree with that, Your Honor. He doesn't have to call that out to the examiner? No? I think to protect the public interest, the inventor has to make it very clear what the scope of the claim is that he's now seeking to protect or to have issued. And he refers, not ideally, I concede that. He could have done a better job. But he did say, look, there's a question about self-sealing characteristics, and here are some judicial opinions which say that that was a disclaimer. Now, he didn't say, I rescind. Well, did he say, and here are some judicial opinions that say that this is a disclaimer? Show me where he said that. Quote, in the litigation referenced in the I.D.S. What page is that? It's 234. Okay. In the litigation referenced in the I.D.S., defendants alleged a restrictive meaning to the word opening, asserting that the opening must have self-sealing characteristics. Right. Now, this is before this Court had decided to take the case. Right, so he didn't call out that this Court has filed a disclaimer here, right? But he called out what the defendants had said. Okay, well, that's not, why would, don't you think there's a different level of relevance and importance that an examiner would attach to something that defendants were saying in litigation as opposed to some conclusion the Court had reached? Isn't that a material distinction? I believe the District Court had already ruled on this, Your Honor. And in the subsequent prosecution, he... Well, where did he call that out? I mean, what you, what I thought you were going to point me to, what I thought you were saying was that the Court, he called out that the Court had found a disclaimer. But what you've shown me is simply an allegation that he's telling them the District, the defendants asserted something. Isn't that an important distinction? That could be an important distinction, Your Honor. He points out at A298 this explicit language, quote, no limitations or prosecution disclaimers on the language of the claims should be reported. Okay, where are you on that? I'm looking at A298. Where are you on that? In the middle of the, one, two, three, four, fourth paragraph? Approximately the middle of the page, Your Honor. Okay. In the paragraph that starts, it is requested. Gotcha. Second sentence, third sentence. No limitations or prosecution disclaimers on the language of the claims should be imported from any claim, sorry, should be imported into any claim from earlier prosecution or prior versions of the claims or prior patents. Then again, he says the claims are allowable based on their own language without any further limitations or disclaimers thereon. So he does specifically get around to talking about disclaimers that arose earlier, and he's being very emphatic that he wants not to be bound by those. I submit to you that any patent lawyer or other person who knows anything about patents who reads this is going to understand that there is no way that this inventor is saying, yes, I'm happy with the prior disclaimer. He's saying with every ounce that he can muster in his voice, he's saying, no, I want to be free of this disclaimer. I don't want to have the self-suing characteristics. My claims are not limited to the self-suing characteristics. But the requirement for him to say that and to disclose that in the record is so that the examiner will know that if there was prior art that the disclaimer was made to avoid, that maybe he ought to look at revisiting that. How is this statement fulsome? Firstly, I think this statement is kind of odd. Maybe in your practice this is done commonly. But to tell the patent office, I'm saying there are no limitations, and I'm assuming that no such importing is being conducted unless a statement is made by the PTO that it is doing so. I mean, that sounds like what my children do to me. Like if I don't hear from you in a half hour, I'm taking the car. I don't think that's the way the patent office conducts its proceedings. Your Honor, I didn't write that, and I wouldn't write that myself. All I can say is that Mr. Cohen or an associate wrote that, and what it does convey in a positive way is the sense that, listen, I don't want to be bound by this self-suing feature. I want patents that are free of that limitation. I'm giving you claims to examine. I'm giving you the prior art. I'm giving you the judicial opinions that are found against me, and I'm saying I want the broadest reasonable interpretation because I have a broader invention. I don't want to eat all the rest of your time, but I do want some discussion of the court's brief analysis of Foley and Burke. Yes, I have a very small amount to say about that. When your Honor turns on the faucet to wash hands, you still get water before you turn the faucet all the way on, and I would suggest that, yes, there's a good claim differentiation argument, but let's not let claim differentiation override common sense. You can wash your hands just by turning on the faucet a little bit. You can get liquid out of a sippy cup with a little bit of suction, and if you apply a lot of suction, yes, it will fully invert, but it would be unusual to say I'm only claiming a sippy cup that inverts when you have a massive amount of suction. That doesn't seem to make sense to me. So I would say common sense should override. But hypothetically, if we were to affirm on the construction of opening, we don't necessarily need to reach the construction of invert, correct? I think you do, Your Honor. We do? I think invert is, well, if you affirm on opening, then we don't really have to get to invert. If you reverse on opening, then I think that is a subordinate issue. Okay. Well, while we store a couple of minutes for rebuttal, if you need it, I'm going to take it from the other side. Thank you. Thank you, Your Honor. Please, the Court. We agree with the spirit of the questions that the record lacks the requisite clarity about whether or not the disclaimer was rescinded. And we take you back to the – Do you agree with the spirit of the questions that the Court was awfully sparse in its fully invert versus partially invert analysis? Should we start with the invert analysis? Sure. Because I think that's your weak point. Although we may never get to it. Well, Your Honor, just simply put, if you look at the 263 patent, for example, what the construction is really relying on is the fact that there are three states that are essentially claimed. There's a state where the opening of the flexible material is at rest, so that's at A148 is the 263 patent. Claim one, element E. And then there's a state in claim 13 of the same patent where the flexible material inverts. And then at 14H, there's a state where it begins to invert. So looking at those three terms, you then try to assign a meeting to the three terms. You go back to the specification, and you look at, for example, the figures in the 263 patent. For example, A18137, you have figure 8D and figure 8E. And that shows the valve in a rest position in 8D, and an inverted position, 8E. So you have the rest position, you have the inverted position. And then you look at the other parts of the specification. For example, at column 7 through lines 2 through 6, in language cited by the court below, you get the Foley requirement as deterrent change begins to invert and inverts. So the simple answer there is that you have these three states, you have specification, definition supporting what the three states entail, and that's how the court reached its construction. I was going to go back to the disclaimer in the opening. So if you look at the test, the test requires clarity in the record, and it puts the burden on the applicant to establish clarity. And clarity requires going back to the disclaimer. And I just want to remind the court what the disclaimer was. It wasn't just saying that we don't want self-sealing anymore. The disclaimer actually was much more involved. And I'll take the court back to A451, A452. This is the language that was in the 931 patent prosecution that this court looked at when it found that there was a disclaimer. So again, that's A451, A452. So this is from the original prosecution. This is from the prosecution of the 931 patent. And this is what the court said or statements that gave rise to the disclaimer. So if you go to 452, A452, if you go down to about the third paragraph down, it starts with, as the present invention is directed to, and I know the court's read the briefs and I won't read through every line, but this is where during prosecution the applicant specifically said, I am restricting my invention to these two mechanisms, not just self-sealing, but it's the self-sealing valve plus the operation with the blocking element. Those two things. And then the applicant went on to end that page, go to the following page, go to the next page. He went through reference by reference, the three references that have been asserted by the patent office to reject the claim. The applicant went through each reference and explained why those references didn't have one or both of the two mechanisms in the disclaimer. That's what he did to give rise to the disclaimer. Okay, but I know I gave your friend a hard time, but why is it not the sentence he referred to on A298, leaving that last part of the sentence off, which is quite annoying, I think. But the first part of the sentence says, no limitations of prosecution disclaimers on the language of the claims should be imported into any claims from an earlier prosecution or prior versions of the claims or prior patents. Why isn't that clearly a rescission? I mean, how better can one say it than to say what he said? Well, I'll answer the last part of the question, how better can one say it? And what we suggest is if you follow the test that this court set out in Hakeem, where you take the examiner back to the prior art and you identify what the disclaimer is, both requirements of this court's test, then what you would do is you would go back to what I just took you to, the disclaimer, and you explain. During the court's holding was that there was a disclaimer. The disclaimer was these two mechanisms, self-sealing combined with the operation of the blocking element provides a better seal than any one alone. You go to the patent office and you say to the examiner, we now want you to examine the claims with that disclaimer withdrawn. We don't want to rely on a combination of those two elements anymore. And if you look at Belcastro, if you look at Robbins, if you look at Bachman, we are entitled to that claim scope because they don't have one or both of those elements. That's the proper way to rescind. We're not saying that's the only way to rescind, Your Honor, but that would be consistent with what this court set out. What about if you just added in CEG and cited the prior decisions there and what they did with regard to disclaimer and said we think those are distinguishable or have no bearing here. Would that be enough notice? Isn't it enough at that point to the examiner to say, hey, wait a minute, now that I know what you're talking about, I have some questions here? We think not, Your Honor, because essentially what you're saying is what they did in later prosecution by submitting the court decisions and the IDSs. And we submit that doesn't provide clarity either because assuming that the examiner read those things, varied among others, and understood what happened, it didn't prompt the examiner to create a clear record of the basis on which he was examining the claims. We know that because we look at what happened with the 077 patent, the reissued patent, that if he had read the court decisions and combined with the... Well, that's the kind of hard argument to make, is it not? I mean, the patent office has provided tons of documents. No one can guarantee that the examiner or anyone there will read them, but the assumption is that if he provides the documents, the onus shifts to the other side and you can safely assume that the documents have been read, right? So let's assume he provided the opinions and the opinions were read by the examiner. Why isn't that enough? And we're willing to grant you that presumption that the examiner read what was submitted in the IDSs. But it's not enough, and we know it's not enough because if you look at the record that followed from those submissions, there is no clarity created in the record that he went back and examined the scope of the claims with the disclaimer rescinded. So had that been enough, we would have a clear record. We don't, so it wasn't... Well, how do we know that? I mean, he could have read it and said, oh, no, that's okay, I looked at the prior art, no problem, he can withdraw the disclaimer. We don't know what went on in his head. He's not required, is he, the examiner, that is, to say explicitly that he's made this finding? So we have two things. One is that we either have a record, as you said, is not clear. So if you agree that, in the question you asked me, it's not clear, then we can stop there because the Hakeem test requires sufficient clarity. So if it's not clear, our position is sustained. The other point I would make is that there is evidence that the examiner did not examine the claims with the disclaimer rescinded, and that evidence is in the 077 patent, the issue, the reissue patent. If the examiner did look at what they've cited as their best evidence of rescission, if he did examine the claims without the disclaimer applied, then the claims would have been broader, and there's no disagreement. The reissue application was filed more than two years after the original application. So back to that question. Either the record is unclear, or the evidence that we pointed to with respect to how the examiner operated with respect to the reissue, that is in our favor, so it's clear in our favor. So you have either of those two options. Either it's not clear and they haven't met the test, or it's clear that they didn't rescind because the 077 patent was issued. So those are two principles of argument. Judge Plager, did you have anything? Yes, I have just a quick question for counsel. Would you care to comment on the question that Judge Wallach alluded to a bit ago as to whether we need to reach the issue of claim construction of the term invert? You simply put, you do not, given the stipulation and the judgment below, it's clear that if you affirm on opening, then we don't need to get to the other term invert. All right, thank you. Thank you. Thank you. This case offers the court a chance to elaborate a little further on the law of rescission and getting rid of disclaimers. The subsequent case of Golden Bridge, which we cited in the reply brief, is consistent with the argument that I have made in Hakem, this court, the operative language is very brief. It said, if I may read it, although a disclaimer made during the prosecution can be rescinded, permitting recapture of the disclaimed scope, the prosecution history must be sufficiently clear to inform the examiner that the previous disclaimer and the priority that it was made to avoid may need to be revisited. Cite a case. Then it goes on to talk about the public notice function to protect the public. I submit to you that this court did not say, listen, you have to have a magical incantation where you must say, here's the disclaimer that I made and I rescind it, I retract it, I denounce it. All that's required under this decision is to protect the public interest and to alert the examiner that there was a disclaimer and I don't want to be bound by it anymore. And Mr. Hakem, through his attorneys, did that repeatedly. He even cited the judicial opinions that said, here's the disclaimer and I don't want that disclaimer. I don't want a self-sealing slit. My invention is broader than that. I'm entitled to broader patent rights. And I see this as a case of kicking an inventor when he has stumbled. He's fallen down. Yes, he made a goofy statement back in the 931 prosecution when he said, this is my invention. But he's now realized it and said, that's not my invention. I have a broader invention. I want broader patent rights. So I'm here asking on behalf of the inventor that he be allowed to have those broader patent rights when he has said, through many words, I don't want to be bound by the prosecution disclaimer. Thank you. We thank both counsel. The case is submitted. That concludes our proceedings for this morning. Thank you, Your Honor. All rise. The honorable court is adjourned until tomorrow morning at 10 a.m.